IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

BRANDON SAVORY                                                                                       PLAINTIFF

V.                                                                    CIVIL ACTION NO. 4:20-cv-119-NBB-JMV

CITY OF GREENWOOD, MISSISSIPPI,
and OFFICER BYRON L. GRANDERSON,
in his individual and official capacities                                                          DEFENDANTS

**MEMORANDUM OPINION**

This cause comes before the court upon the defendants' motions for summary judgment. Upon due consideration of the motions, responses, exhibits, and applicable authority, the court is ready to rule.

Factual Background and Procedural Posture

This Section 1983 action arises from the November 17, 2019 arrest of the plaintiff, Brandon Savory. On that date, Lindsey Savory, the plaintiff's wife, contacted the Greenwood, Mississippi Police Department alleging that she had been assaulted by her husband and was bleeding. Lieutenant Rolando Galvan and Officer James Hammer responded to the call and went to the residence where they interviewed Mrs. Savory who was outside the house sitting in her car crying. Mrs. Savory exhibited signs of facial bruising and a bloodied and broken nose. She informed Galvan that the plaintiff had struck her in the face with a closed fist when she came to the house to retrieve some clothing. Hammer asked Mrs. Savory if she needed medical care, and she responded that she did not know, but she was scared. Hammer also asked Mrs. Savory if the plaintiff had any weapons in the house, and she responded that she did not know.

The officers then knocked on the front door of the house and asked Savory if they could come in and speak with him about the incident. The main door to the house was open, but the

storm door was closed. Savory responded by denying the incident and informing the officers that they could not come in and that he was not coming outside to speak with them because he did not call the police. The officers again asked Savory to come outside, but he refused. Savory then closed the door on the officers who continued to knock and asked Savory to step outside so they could talk. Savory yelled through the door that he was not coming outside to speak with them because Mrs. Savory was lying, and they should speak with her. The officers asked Savory several more times to come outside, but he refused.

Savory and Officer Hammer then began communicating through a window. Savory continued to deny Mrs. Savory's story. He informed the officers that they were married but separated and that Mrs. Savory is a liar and alcoholic and that she had tried to break into the house earlier that day. The officers could see and hear Savory speaking with individuals inside the house. Savory continued to refuse the officers' requests to come outside to speak with them. Several other officers had arrived on the scene as backup at this point. Hammer joined the other officers in the yard and called MedStat for Mrs. Savory's injuries.

Officer Kevin Hayes, who had arrived as backup, informed the other officers that Savory has a history of barricading himself in the house. All the officers heard the voices of several people inside the house.

Detective Byron Granderson then arrived on the scene. He knocked on the door and instructed Savory to open the door, but Savory failed to comply. Granderson then warned Savory he was going to come into the house if Savory did not open the door, but Savory still refused to open the door. Granderson went to his car to retrieve a sledgehammer and returned to the front door and knocked again. Savory continued to refuse to open the door, so Granderson opened the door with the sledgehammer.

The officers could hear Savory's pit bull, "Danger," prior to Granderson's entering the house. Savory testified in his deposition that Danger was barking and growling and agitated. Savory stated that if Danger does not know a person, "you are going to get bit."

As Granderson entered Savory's house, he instructed Savory to "get down." Savory did not comply with the instruction. Granderson asserts that Savory held something in his hand, but Granderson was unsure what it was and whether it was a weapon which could have been used to harm him or a fellow officer. When Savory failed to comply with Granderson's order to "get down," Granderson tased Savory.

The other officers secured the scene and got the identification of the other occupants who informed the officers that Savory had instructed them not to open the door for the officers. Savory was placed in handcuffs and transported to Greenwood Leflore Hospital ("GLH"). While at GLH, Savory began cursing loudly in front of adults and children and was warned that he would be charged with public profanity. Savory was examined by Dr. William D. Allen and given an EKG, which was normal.

Savory was discharged from GLH and transported to the Leflore County Jail where he was charged with assault (domestic violence), disorderly conduct (failure to comply), resisting and obstructing arrest, and public profanity. Savory pled guilty to disorderly conduct (failure to comply) and public profanity. Savory has not sought any additional medical treatment for any alleged injuries related to the incident.

Savory has an extensive criminal history and is well known by the Greenwood Police Department. He has been arrested on numerous occasions and spent substantial time in jail and prison. On August 16, 2002, Savory was arrested for aggravated assault. On May 13, 2009, he was arrested for possession of marijuana with intent to distribute (enhanced). Later that year, on

December 2, 2009, Savory entered a guilty plea for uttering forgery and was placed on parole. On April 8, 2011, Savory was arrested for possession of crack cocaine. On November 7, 2012, he was arrested for burglary and robbery. On June 24, 2014, Savory entered a guilty plea for a telephone harassment charge. On August 29, 2015, Savory was arrested and charged with disturbing the peace and two counts of disorderly conduct (failure to comply). Savory was found guilty on the two counts of disorderly conduct (failure to comply). At some point in 2015, Savory violated his parole and was sent back to prison for four to five months. On August 23, 2017, Savory was charged with and pled guilty to domestic violence simple assault for an assault against his wife. He was ordered to undergo anger management counseling. Less than three months later, on November 1, 2017, Savory was arrested for domestic violence-simple assault. Savory was again ordered to anger management counseling and was sentenced to a 30-day suspended sentence. A month later, on December 4, 2017, Savory was yet again arrested for domestic violence-simple assault. This time Savory was ordered to have anger management counseling and was sentenced to additional time. On January 29, 2018, Savory was arrested for felony domestic violence. On February 8, 2018, Savory was again arrested for uttering forgery and was given credit for time served as his sentence. On July 5, 2018, Savory was charged with domestic violence-simple assault for an incident involving a woman who was not his wife and was ordered to undergo anger management counseling. On January 1, 2019, Savory was arrested for simple assault, aggravated assault, and domestic violence. Later that year, on August 5, 2019, Savory was sentenced for a simple assault charge involving his wife. A few months later, on October 9, 2019, he was arrested for contempt due to his failure to pay his restitution.

  Savory filed this lawsuit on July 7, 2020, pursuant to 42 U.S.C. § 1983 for alleged violations of his Fourth and Fourteenth Amendment rights, namely wrongful arrest, excessive

4

force, due process, deliberate indifference to his medical care, negligent training, supervision, and retention, supervisory liability, and failure to intervene, as well as state law claims of negligence, assault and battery, and negligent or intentional infliction of emotional distress. Savory also asserts a claim of wrongful entry, but this claim was not pled in his complaint and is not properly before the court.

## Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When deciding a motion for summary judgment, the court must view the underlying facts in the "light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). As such, all reasonable inferences must be drawn in favor of the non-movant. *Id.* Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita*, 475 U.S. at 587 (1986). "Summary judgment, although a useful device, must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989).

<u>Analysis</u>

The legal standards which govern the allegations in the plaintiff's complaint are well settled. Actions against municipalities are analyzed under a framework that requires a plaintiff to show both (1) that a violation of the Constitution occurred and (2) that a governmental policy or custom was the moving force behind the violation. *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009). Individual capacity defendants enjoy qualified immunity unless a plaintiff can show both (1) that a constitutional violation occurred and (2) that the individual capacity defendants acted objectively unreasonable under clearly established law. *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252-53 (5th Cir. 2005). Under both these standards, Savory's claims are deficient, because Savory cannot prove a constitutional violation.

Savory was convicted of disorderly conduct (failure to comply) and public profanity as a result of the incident giving rise to this lawsuit. His claim for false or unlawful arrest is therefore a non-starter. Pursuant to *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), Section 1983 may not be used to undermine a prior criminal conviction. Savory's convictions in this case conclusively establish the existence of probable cause, which in turn defeats any constitutional claim based on an alleged false detention. Savory's claim for wrongful arrest must fail.

Savory's claim for excessive force also fails. In the recent case of *Cloud v. Stone*, 993 F.3d 379, 384-87 (5th Cir. 2021), the Fifth Circuit held that an officer did not use excessive force when tasing a suspect who displayed a confrontational manner and turned to face the officer while one hand was handcuffed. The court also explained that a subsequent drive stun from the taser was not excessive because the suspect continued his refusal to comply with the officer's commands. *Id.* at 386-87. In the present case, once Granderson entered Savory's home, Savory refused to comply with his command to "get down" and, according to Granderson, instead got

into a defensive posture prepared to fight. Granderson also could not see what Savory held in his hand and whether it was a weapon. Notwithstanding these details, it is clear that Savory refused to comply with Granderson's orders. "[W]here a suspect resists arrest or fails to follow police orders, officers do not violate his right against excessive force by deploying their taser to subdue him." *Buchanan v. Gulfport Police Dep't*, 530 F. App'x 307, 314 (5th Cir. 2013). The court finds Granderson's conduct objectively reasonable under the circumstances, and the excessive force claim must be dismissed.

Savory's Fourteenth Amendment due process claim fails as well. First, Savory's due process rights are not properly evaluated under the Fourteenth Amendment but rather under the Fourth Amendment. "[A]ll claims that law enforcement officers have used excessive force … in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Supreme Court has held that, as here, "where another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process." *Conn v. Gabbert*, 526 U.S. 286, 293 (1999).

The court also finds that Savory's claim for deliberate indifference to medical care must fail. Although Savory seems to allege both a Fourth and Fourteenth Amendment claim here, as the Fifth Circuit has explained, "After the initial incidents of a seizure have concluded and an individual is being detained by police officials but has yet to be booked, an arrestee's right to medical attention, like that of a pretrial detainee, derives from the Fourteenth Amendment." *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 473 (5th Cir. 1996). "Thus, an arrestee's

7

complaint for such denial is evaluated under the same standards applicable to substantive due process claims of pretrial detainees." *Nowell v. Acadian Ambulance Serv.*, 147 F. Supp. 495, 505 n.10 (W.D. La. 2001) (quoting *Nerren*, 86 F.3d at 472).

"'Pretrial detainees have a constitutional right … not to have their serious medical needs met with deliberate indifference.'" *Kelson v. Clark*, 2021 U.S. App. LEXIS 18129, at *6 (5th Cir. June 17, 2021) (quoting *Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001)). "Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). To establish a deliberate indifference claim, a plaintiff must show that "(1) the official was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' and (2) the official actually drew that inference." *Kelson*, 2021 U.S. App. LEXIS 18129, at *7 (quoting *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020)). As such, an officer "is not liable unless 'he knows of and disregards an excessive risk' to plaintiff's safety." *Id.* (quoting *Garza v. City of Donna*, 922 F.3d 626, 635 (5th Cir. 2019)). Deliberate indifference "'cannot be inferred merely from a negligent or even grossly negligent response to a substantial risk of serious harm.'" *Id.* (quoting *Thompson*, 245 F.3d at 459). Instead, "the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino*, 239 F.3d at 756 (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

None of that happened here. It is undisputed that Savory was taken directly from his home to the hospital after he was tased. He was examined by a physician who ordered an EKG. The EKG was normal, and Savory was released from the hospital. According to Savory's discovery responses, when asked why he believed Granderson was deliberately indifferent to his

8

medical condition, he said "it took nearly 30 minutes to get me to the hospital. Not only was I in shock, but I was bleeding as well." Nowhere does Savory allege, much less provide evidence, that Granderson "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* Accordingly, this claim must fail.

Savory's claims for supervisory failure or failure to intervene do not seem to be directed at Granderson but rather at "John Doe" defendants. Regardless, the claim fails because Savory cannot establish a constitutional violation based on Granderson's conduct; thus, his claim against the other officers for failing to supervise or intervene is a non-starter. "The Fifth Circuit has held where no constitutional violation … is shown, there is no bystander liability for failing to intervene." *Mack v. Smith*, No. 5:15cv202, 2017 WL 8217697, at *4 (E.D. Tex. Dec. 29, 2017) (citing *Davis v. Cannon*, 91 F. App'x 327 (5th Cir. 2004)).

As for Savory's claims of municipal liability, it is well established that, "[w]ithout an underlying constitutional violation, an essential element of municipal liability is missing." *Doe ex rel. Magee v. Covington County School Dist. ex rel. Keys*, 675 F.3d 849, 867 (5th Cir. 2012). Because Savory cannot demonstrate a constitutional violation against the individual defendant, Granderson, or the other officers, there necessarily can be no municipal liability. *Id.* Accordingly, Savory's claims against the City of Greenwood and his claims against Granderson in his official capacity[1] should be dismissed.

---

[1] "[A] suit against a municipal officer in his official capacity is treated as a suit against the municipality." *Adams v. May*, 903 F. Supp. 2d 433, 440 n.63 (S.D. Miss. 2012) (citing *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690 n.55 (1978)).

Finally, the court, having found that Savory's federal claims must be dismissed, declines to exercise its ancillary jurisdiction over Savory's state law claims, and those claims will be dismissed without prejudice.

Conclusion

For the foregoing reasons, the court finds that the defendants' motions for summary judgment are well taken and should be granted. A separate order in accordance with this opinion will issue this day.

This 30th day of March, 2022.

    /s/ Neal Biggers
NEAL B. BIGGERS, JR.
UNITED STATES DISTRICT JUDGE